UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INDYMAC VENTURE, LLC, a Delaware Limited Liability Company, | |
| Plaintiff, | C09-1069Z |
| v. | ORDER |
| SILVER CREEK CROSSING, LLC, an Oregon Limited Liability Company; et al., | |
| Defendants. | |

THIS MATTER comes before the Court on Plaintiff IndyMac Venture, LLC's Motion to Dismiss Defendants' Counterclaims and Motion to Strike Defendants' Affirmative Defenses, docket no. 34. By Minute Order dated March 15, 2010, docket no. 47, the Court GRANTED the motion. This Order explains the basis for the Court's ruling.

**Background**

On October 27, 2006, Defendant Silver Creek Crossing, LLC ("Borrower") and IndyMac Bank, F.S.B. ("Original Lender") entered into a Building Loan Agreement (the "Building Loan Agreement"). First Amended Complaint ("Compl."), docket no. 16-2, ¶ 13. Original Lender agreed to loan Borrower $10,970,991 to acquire real property on which to begin a condominium construction project (the "Project"). Id. ¶ 13, Ex. B (Building Loan

ORDER - 1

Agreement), C (Promissory Note).  The loan was originally due and payable on April 26, 2008.  Compl. ¶ 13.

The Building Loan Agreement provided that, subject to its terms, conditions, and procedures, the Original Lender "shall make Disbursements to or for the account of the Borrower and issue or cause to be issued Set Aside Letters and Letters of Credit from time to time from the date of this Agreement to the Banking Day immediately preceding the Maturity Date."  Id., Ex. B, ¶ 3.00.  An event of default under the loan agreement includes Borrower's failure to pay any principal, interest, or other amount when due, or any party's failure to perform under the loan agreement.  Id., Ex. B, ¶ 6.01.  "Upon the occurrence of any Event of Default, the [Original] Lender may, without notice to or demand upon the Borrower . . . , terminate all commitments to make Disbursements or issue Set Aside Letters or cause the issuance of Letters of Credit . . . ."  Id., Ex. B, ¶ 6.02(a).

The Building Loan Agreement also provided for an "extension option."  Id., Ex. B, ¶ 7.13.

> [Original] Lender shall have the option, in its sole discretion, to grant one six (6) month extension of Maturity Date to Borrower. . . . [Original] Lender's decision to grant the extension of the Maturity Date shall be based on (i) terms and conditions independently negotiated in good faith with Borrower at the time of the request for the extension and (ii) the [Original] Lender's new credit analysis of the Borrower, utilizing current information on financial conditions and trends.

Id.  The Building Loan Agreement stated that "**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW**."  Id., Ex. B, at 37 (emphasis in original).

In September 2007, Original Lender (through Greg White) and Borrower (through Mark Hanson) orally agreed to a six month extension of the loan ("Extension Agreement").  Answer, docket no. 30, ¶ 48.  Defendants do not allege that the Extension Agreement was in writing or signed by Original Lender.  See Answer.

ORDER - 2

Original Lender was closed by the Office of Thrift Supervision on July 11, 2008, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver of Original Lender.  Compl. ¶ 8.  A new institution, IndyMac Federal Bank, F.S.B., was chartered, and substantially all of Original Lender's assets, including the Building Loan Agreement, were transferred to IndyMac Federal Bank, F.S.B.  Id. ¶ 9.  IndyMac Federal Bank, F.S.B., was then placed in conservatorship, and the FDIC was appointed conservator.  Id.  On March 19, 2009, the FDIC transferred certain assets, including the Building Loan Agreement, from IndyMac Federal Bank, F.S.B., to Plaintiff, IndyMac Venture, LLC.  Id. ¶ 10.

Defendants have alleged counterclaims and affirmative defenses based on Plaintiff's failure to honor the Extension Agreement.  Plaintiff has moved to dismiss the counterclaims and affirmative defenses relating to the Extension Agreement.

**Discussion**

**A.  Applicable Law**

**1.  Applicable Federal Law**

Plaintiff argues that 12 U.S.C. § 1823(e) and D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp., 315 U.S. 447 (1942), apply to this case.  Section 1823(e) and the D'Oench, Duhme Doctrine require any loan agreement asserted against the FDIC to be in writing.

Section 1823(e)(1) states,

[n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section . . . shall be valid against the [FDIC] unless such agreement–
(A)  is in writing,
(B)  was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(C)  was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(D)  has been, continuously, from the time of its execution, an official record of the depository institution.

ORDER - 3

1    Section 1823(e) is generally understood to have codified the common law rule of the
2    D'Oench, Duhme Doctrine.  In D'Oench, Duhme, petitioner had executed a demand note
3    payable to the bank, but petitioner had a "secret agreement" with the bank that the note
4    would not be enforced.  315 U.S. at 454, 460.  The FDIC later acquired petitioner's note.
5    Id. at 454.  The D'Oench, Duhme Court held federal policy protects the FDIC, and the public
6    funds it administers, against misrepresentations as to the securities or other assets in the
7    portfolios of the banks it insures or makes loans to.  Id. at 457.  Thus, regardless of whether
8    creditor's have been deceived or specifically injured, a borrower cannot escape liability on a
9    "secret agreement" "even though he was 'very ignorant and ill-informed of the character of
10   the transaction.'"  Id. at 458-59.

11       Courts have expanded the scope of the D'Oench, Duhme Doctrine "as a principle of
12   equitable estoppel that permits bank examiners to rely on the records of a bank in evaluating
13   the bank's financial condition, by protecting the bank authorities from suits founded on
14   undisclosed conditions or deceptive documents."  Brookside Assocs. v. Rifkin, 49 F.3d 490,
15   493 (9th Cir. 1995) (bank authority misrepresentations could not support a suit when those
16   misrepresentations were not listed on bank documents as a representation on which plaintiffs
17   had relied).  Courts have also extended the protections of both 12 U.S.C. § 1823(e) and
18   D'Oench, Duhme to banks that have acquired assets from the FDIC.  See, e.g., Federal
19   Deposit Ins. Corp. v. Newhart, 892 F.2d 47, 49-51 (8th Cir. 1989); Porras v. Petroplex Sav.
20   Ass'n, 903 F.2d 379, 380-81 (5th Cir. 1990).  The protections found in 12 U.S.C. § 1823(e)
21   and the D'Oench, Duhme Doctrine bar both contract and tort defenses, and affirmative
22   claims arising out of an alleged secret agreement.  Timberland Design, Inc. v. First Serv.
23   Bank for Sav., 932 F.2d 46, 50 (1st Cir. 1991).

24       Defendants argue, however, that Ledo Financial Corp. v. Summers, 122 F.3d 825 (9th
25   Cir. 1997), should control in the present case.  Defendants' reliance on Ledo is misplaced.  In
26

ORDER - 4

1  Ledo, the plaintiff loaned $500,000 to a bank pursuant to an unwritten agreement that the
2  bank would repay the plaintiff.  Id. at 826, 827.  The Ledo Court held that 12 U.S.C.
3  § 1823(e) "applies solely to assets and not to agreements pertaining to liabilities of a bank in
4  receivership."  Id. at 830.  Thus, because the loan to the bank at issue in Ledo was a liability
5  of that bank, § 1823(e) did not bar plaintiff's claims.  Id.  The Ledo Court also found that the
6  D'Oench, Duhme Doctrine did not bar petitioner's claims because the FDIC had not acquired
7  the underlying note.  Id. at 829.

In contrast to the liability in Ledo, the Building Loan Agreement was an asset of the
original lender acquired by Plaintiff.  Therefore, because the FDIC acquired the Building
Loan Agreement from Original Lender, the Court holds that 12 U.S.C. § 1823(e) and the
D'Oench, Duhme Doctrine control the outcome in this case.

### 2.    Applicable State Law

Plaintiff also correctly argues that the disputed Extension Agreement also fails under
Washington law.  Under Washington law, a credit agreement, which includes "an agreement,
promise, or commitment . . . to forebear with respect to the repayment of any debt or the
exercise of any remedy," RCW 19.36.100, is not enforceable against the creditor unless the
agreement is in writing and signed by the creditor.  RCW 19.36.110.  Partial performance of
a credit agreement does not remove the agreement from the operation of chapter 19.36.  Id.
Notice of the requirements of chapter 19.36 must be provided to the debtor either
simultaneously with or before a credit agreement is made.  RCW 19.36.130.  This conclusion
should not be surprising to Defendants in light of the bold warning in the Building Loan
Agreement that oral agreements **"TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING PAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW."** Compl., Ex. B, at 37 (emphasis in original).

ORDER - 5

**B.     Standard for Motion to Dismiss**

Plaintiff moves under Rule 12(b)(6) to dismiss Defendants' counterclaims. The Court must assume the truth of Defendants' factual allegations and draw all reasonable inferences in Defendants' favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the claim for relief sufficiently state a "plausible" ground for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57 (2007). A pleading may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

**C.     Defendants' Counterclaims**

In their first counterclaim, Defendants allege that Borrower is entitled to damages for Original Lender's breach of the Extension Agreement. Answer ¶ 58. Because Defendants have not alleged that the Extension Agreement was in writing, see Answer, the Court finds that Defendants' first counterclaim does not allege a plausible claim for relief under 12 U.S.C. § 1823(e) and the D'Oench, Duhme Doctrine. The Court further finds that Defendants' first counterclaim does not state a claim under RCW chapter 19.36 because Defendants' have not alleged that the Extension Agreement was in writing. Therefore, the Court dismisses Defendants' first counterclaim.

In their second counterclaim, Defendants dispute Plaintiff's declaration that Borrower was in default on the Building Loan Agreement and allege that they hold setoff, recoupment rights, and counterclaims against Plaintiff. Answer ¶ 60. "Nothing contained in [RCW 61.24.130] shall prejudice the right of the borrower, . . . [or] any guarantor . . . to restrain, on any proper legal or equitable ground, a trustee's sale." RCW 61.24.130. Plaintiff argues that Defendants' second counterclaim should be dismissed because RCW 61.24.130 does not provide any separate cause of action or legal claim. Defendants do not contest this argument. Therefore, the Court dismisses Defendants' second counterclaim.

ORDER - 6

**D.      Standard for Motion to Strike**

Under Rule 12(f), the Court may strike an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have stricken defenses that were unsupported by facts entitling defendants to relief, <u>Qarbon.com Inc. v. eHelp Corp.</u>, 315 F. Supp. 2d 1046, 1050 (N.D. Cal. 2004), and when defenses rely on facts that, even if true, would not provide a valid defense to the claims asserted, <u>Solis v. Zenith Capital, LLC</u>, 2009 WL 1324051, at *2 (N.D. Cal. May 8, 2009).

**E.      Defendants' Affirmative Defenses**

In their affirmative defenses, Defendants assert: (1) Original Lender's breach of the Extension Agreement voids Plaintiff's declaration of default and all of Plaintiff's claims against Defendants; (2) Borrower is entitled to setoff or recoup Borrower's damages caused by Original Lender's breach of the Extension Agreement; (3) Plaintiff is estopped from asserting all of Plaintiff's claims due to Original Lender's failure to honor the Extension Agreement; and (4) Plaintiff's claims are barred by Original Lender's waiver of Borrower's default by Original Lender's failure to honor the Extension Agreement. Answer ¶¶ 53-56. Because each of these affirmative defenses relies upon the validity of the Extension Agreement, and because Defendants have not alleged that the Extension Agreement was in writing, the Court concludes that Defendants' affirmative defenses must be stricken pursuant to 12 U.S.C. § 1823(e), the <u>D'Oench, Duhme</u> Doctrine, and RCW chapter 19.36.

**F.      Conclusion**

For the foregoing reasons, the Court holds as a matter of law that 12 U.S.C. § 1823(e) and the <u>D'Oench, Duhme</u> Doctrine apply in the present case, and the Court GRANTS Plaintiff's Motion to Dismiss Defendants' Counterclaims and Motion to Strike Defendants' Affirmative Defenses. Defendants are GRANTED LEAVE TO AMEND, by April 19, 2010, to allege any breach of contract relating solely to the original Building Loan Agreement or any other counterclaim or affirmative defense relating to the Building Loan Agreement.

IT IS SO ORDERED.

DATED this 18th day of March, 2010.

                                        Thomas S. Zilly
                                        United States District Judge

ORDER - 8